IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | INFORMATION |
| ) | |
| Plaintiff, ) | |
| ) | JUDGE BOYKO |
| v. ) | |
| ) | CASE NO. 4 16 CR 190 |
| DAVID N. JENKINS, ) | |
| ) | Title 33, Section 1319(c)(2)(A), |
| Defendant. ) | United States Code |

The United States Attorney charges:

Background

1. At all times material herein, the Mahoning River begins in Northeast Ohio and eventually flows east where it joins the Shenango River in Pennsylvania. In total, the Mahoning River is approximately 113 miles long.

2. Defendant, DAVID N. JENKINS, was an employee of Hardrock Excavating LLC ("Hardrock"), an Ohio company. Hardrock was a business that provided services to the oil and gas industry in Ohio and Pennsylvania. One of Hardrock's services was the storage, treatment, and disposal of waste liquids generated from oil and gas well drilling operations. Some of the waste liquids accepted by Hardrock included brine, flowback, and oil based drilling mud. Brine

is water with a high quantity of salt dissolved in it. Flowback is the liquid left over as part of hydrofracturing ("fracking") and oil-based drilling mud is a semi-solid slurry that contains petroleum products.

3. Storage and processing of waste liquids occurred at Hardrock's facility (the "facility") in Youngstown, Ohio. As of January 31, 2013, there were 58 storage tanks located at the facility. Each tank has an approximate capacity of 20,000 gallons. The facility is within one mile of the Mahoning River.

## Summary of CWA Requirements

4. The Federal Water Pollution Act, 33 U.S.C. § 1251, et seq., more commonly known as the Clean Water Act ("CWA"), was enacted by Congress to restore and maintain the chemical, physical, and biological quality of the nation's waters. See 33 U.S.C. § 1251(a).

5. The United States Environmental Protection Agency ("U.S. EPA") is an agency of the United States government responsible for carrying out federal laws and regulations related to the protection of human health and the environment, including the CWA. See 33 U.S.C. § 1251(d).

6. The CWA generally requires all discharges of pollutants from point sources to waters of the United States to be permitted. See 33 U.S.C. § 1311(a). Such permits are issued under the National Pollutant Discharge Elimination System ("NPDES"). See 33 U.S.C. § 1342. Except in compliance with such a permit, the discharge of any pollutant by any person is unlawful. See 33 U.S.C. § 1311(a).

7. The term "pollutant" is broadly defined under the CWA to include "dredged spoil, solid waste, incinerator residue, sewage, garbage, sewage sludge, munitions, chemical wastes, biological materials, radioactive materials, heat, wrecked or discarded equipment, rock, sand,

cellar dirt and industrial, municipal, and agricultural waste discharged into water." See 33 U.S.C. § 1362(6).

8. A "point source" means "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." See 33 U.S.C. § 1362(14).

9. "Waters of the United States" is defined to include intrastate lakes, rivers, and streams, including intermittent streams, the use, degradation, or destruction of which would or could affect interstate or foreign commerce. See 40 C.F.R. § 122.2.

## Unpermitted Discharges

10. Starting on or about December 12, 2013, at the direction of Benedict W. Lupo ("Lupo"), the owner of Hardrock, Michael P. Guesman ("Guesman") emptied some of the waste liquid being stored at the facility into a nearby stormwater drain. Mr. Lupo further directed that Guesman conduct this activity only after no one else was at the facility and after dark.

11. Defendant DAVID N. JENKINS and Lupo discussed Lupo's plan to empty waste liquid stored at the Hardrock facility into a nearby stormwater drain. Further, Defendant DAVID N. JENKINS was aware that Lupo had been directing Guesman to empty the stored waste liquids at night.

12. Typically Lupo spoke with Guesman about emptying the storage tanks at night. However, on occasion, Lupo was unable to speak directly with Guesman. In those instances, Lupo directed Defendant DAVID N. JENKINS to contact Guesman about emptying the stored waste liquids into the stormwater drain at night. In each of those instances, Defendant DAVID

N. JENKINS contacted Guesman and Guesman emptied the stored waste liquids into the stormwater drain at night.

13. On or about January 31, 2013, was the last time Guesman emptied some of the waste liquid being stored at the facility into the nearby stormwater drain. The waste liquid emptied into the stormwater drain that night included a mixture of brine and oil-based drilling mud.

14. The stormwater drain, into which the waste liquids had been emptied, flowed into an unnamed tributary of the Mahoning River, which is a water of the United States.

## COUNT 1

15. From on or about December 12, 2012, through on or about January 31, 2013, on several occasions in the Northern District of Ohio, Eastern Division, Defendant, DAVID N. JENKINS, knowingly directed the discharge of a pollutant from a point source into a water of the United States, without a NPDES permit, specifically, at the direction of Lupo, Defendant, DAVID N. JENKINS, directed Guesman to empty waste liquids being stored at the Hardrock facility into a stormwater drain which flowed into an unnamed tributary of the Mahoning River and ultimately into the Mahoning River, in violation of Title 33, United States Code, Section 1319(c)(2)(A) and Title 18, United States Code, Section 2.

CAROLE S. RENDON
Acting United States Attorney

By: _____
EDWARD F. FERAN
Chief, Major & Organized Crime Unit

4